IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-212-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SEAN ALEXANDER HAYNES, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court to memorialize and expand upon certain oral rulings made at time of sentencing, held August 10, 2016. In particular, the court overruled defendant's objection to his recommended base offense level of 20, resulting from his prior conviction of a crime of violence, pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") §2K2.1(a)(4)(A).

## BACKGROUND

On January 13, 2016, defendant pleaded guilty, with benefit of written plea agreement, to being a convicted felon in possession of a firearm and ammunition, a violation of 18 U.S.C. §922(g)(1). On August 10, 2016, the court sentenced defendant to 38 months imprisonment.

A number of factors influenced defendant's sentence. Defendant's relevant criminal history yielded a "criminal history score" of 8, which placed defendant in criminal history category IV. See generally U.S.S.G. §§4A1.1 & 4A1.2 (concerning criminal history scoring). Defendant's offense conduct yielded a total adjusted offense level of 21. The court began by calculating defendant's base offense level as 20, pursuant to U.S.S.G. §2K2.1(a)(4)(A). That provision applies if the defendant previously has been convicted of either a "crime of violence" or "controlled substance offense." The

court reasoned defendant's prior conviction for common law robbery under North Carolina law qualified as a "crime of violence." Next, the court enhanced defendant's offense level by four points under U.S.S.G. §2K2.1(b)(6)(B), which applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The court then decreased defendant's offense level by three points for acceptance of responsibility, under U.S.S.G. §3E1.1.

Based on defendant's criminal history category and total adjusted offense level, the advisory Sentencing Guidelines recommended a sentence of 57 to 71 months imprisonment. However, prior to sentencing the United States filed a motion for downward departure, pursuant to U.S.S.G. §5K1.1. Based on the United States's proffer, the court granted a downward departure of approximately 33% from the low end of the advisory Guidelines range, yielding a sentence of 38 months.

At sentencing, defendant objected to the court's calculation of his base offense level. According to defendant, his conviction under North Carolina law for common law robbery is not a "crime of violence," and, thus, cannot trigger U.S.S.G. §2K2.1(a)(4)(A)'s enhanced penalties. Instead, defendant argued his base offense level should be 14, pursuant to U.S.S.G. §2K2.1(a)(6)(A). That provision applies if the defendant "was a prohibited person at the time the defendant committed the instant offense." Under defendant's theory, his criminal history category and total adjusted offense level would yield an advisory Guidelines range sentence of 27 to 33 months. Coupling that advisory Guidelines range with the United States's recommended departure would, in turn, yield a total sentence of 18 months.

**COURT'S DISCUSSION**

The court calculated defendant's base offense level as 20, based on U.S.S.G. § 2K2.1(a)(4)(A). That provision states that the court should apply a base offense level of 20 if "the

defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. §2K2.1(a)(4)(A). As disclosed above, the court concluded at sentencing that defendant's prior conviction for common law robbery under North Carolina law was a "crime of violence."

Section 2K2.1 does not define the term "crime of violence." Rather, it cross references U.S.S.G. §4B1.2(a). See U.S.S.G. 2K2.1 n.1 ("'Crime of violence' has the meaning given that term in § 4B1.2 (a) and Application Note 1 of the Commentary to § 4B1.2."). Section 4B1.2(a) defines the phrase "crime of violence" as follows: "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that 1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or 2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>." U.S.S.G. §4B1.2(a) (emphasis added).[1] Thus, to trigger U.S.S.G. §2K2.1(a)(4)(A)'s enhanced penalty, common law robbery must "categorically" meet either of those definitions. See United States v. Montes-Flores, 736 F.3d 357, 364 (4th Cir. 2013) ("In determining whether a prior conviction triggers a sentence enhancement under the Sentencing Guidelines,. . .[the court] approach[es] the issue categorically, looking only to the fact of conviction and the statutory definition of the prior offense.") (internal quotations omitted).

---

[1] The sentencing Guidelines subsequently have been amended. See U.S.S.G. § 4B1.2(a) (effective Aug. 1, 2016). Under that version of the Guidelines, the term "crime of violence" is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that 1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or 2) "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm. . .or explosive material." Id. However, to avoid any potential ex post facto issue, the court applies that version of the advisory Sentencing Guidelines promulgated on November 1, 2014, the version in effect on the date defendant committed the criminal act charged in the indictment.

3

Everyone agrees that common law robbery does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." See United States v. Gardner, 823 F.3d 793, 804 (4th Cir. 2016); United States v. Hinton, 4:15-CR-26-FL, 2016 WL 632447, at *2 (E.D.N.C. Feb. 17, 2016). Similarly, common law robbery is not categorically "burglary of a dwelling, arson, or extortion"; nor does it involve the "use of explosives." See Gardner, 823 F.3d at 802 n.5 (observing common law robbery is not extortion because it does not require consent). But see Wayne R. LaFave, 3 Substantive Criminal Law §20.4 (2d ed.) ("It is sometimes said that robbery differs from statutory extortion in those states which require property acquisition in that in the former the taking of property must be 'against the will' of the victim, while in the latter the taking must be 'with the consent' of the victim, induced by the other's unlawful threat; but, in spite of the different expressions, there is no difference here, for both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done."); see also id. §20.3 ("[I]t is the immediacy of. . .[a] threat[] that escalates the theft from extortion to robbery."). Thus, to trigger U.S.S.G. §2K2.1(a)(4)(A)'s enhanced penalty, common law robbery must fall under that text emphasized above, a confusing phrase commonly known as the "residual clause." In prior decisions, the Fourth Circuit held that common law robbery qualified as a crime of violence under U.S.S.G. §4B1.2(a)'s residual clause. See, e.g., United States v. Carmichael, 408 F. App'x 769, 770–71 (4th Cir. 2011).

The residual clause, however, and specifically its application in the context of the advisory Sentencing Guidelines, presents a vexing problem; it is arguably unconstitutional. In Johnson v. United States, __ U.S.__, 135 S. Ct. 2551 (2015), the Supreme Court held unconstitutional the identically worded residual clause of the Armed Career Criminal Act (the "ACCA"). In doing so,

4

the Court relied on the Fifth Amendment vagueness doctrine. A criminal law is unconstitutionally vague where "it fails to give ordinary people fair notice of the conduct it punishes," or otherwise is "so standardless that it invites arbitrary enforcement." Johnson, 135 S. Ct. at 2556. According to the Johnson Court, the ACCA's residual clause was unconstitutionally vague for two reasons. First, it left "grave uncertainty about how to estimate the risk posed by a crime." Id. at 2557. It did so because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." Id. Second, the ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." Id. at 2558. Specifically, it required judges to apply the ACCA "to a judge-imagined abstraction." Id.

Many courts have extended Johnson's logic to U.S.S.G. §4B1.2(a)'s residual clause, striking it as unconstitutionally vague. See, e.g., United States v. Sheffield, __ F.3d __, 2016 WL 4254995, at *13 (D.C. Cir. 2016); United States v. Calabretta, __ F.3d __, 2016 WL 3997215, at *5–6 (3d Cir. 2016); United States v. Pawlak, 822 F.3d 902, 904 (6th Cir. 2016); United States v. Maldonado, 636 F. App'x 807, 809–10 (2d Cir. 2016); United States v. Madrid, 805 F.3d 1204, 1210–11 (10th Cir. 2015); see also United States v. Torres, __ F.3d __, 2016 WL 3770517, at *9 (9th Cir. 2016) (assuming Johnson applies to the advisory Sentencing Guidelines); Stanley v. United States, __ F.3d __, 2016 WL 3514185, at *1 (7th Cir. 2016) (same); United States v. Soto-Rivera, 811 F.3d 53, 59 (1st Cir. 2016) (same); United States v. Taylor, 803 F.3d 931, 933 (8th Cir. 2015) (reasoning that prior circuit precedent, which held the advisory Sentencing Guidelines categorically immune from vagueness attacks was "doubtful" after Johnson). In the usual case, such a resolution would be the most logical and most appropriate. See United States v. Clay, 627 F.3d 959, 965 (4th Cir. 2010). Indeed, the Fourth Circuit previously has held that because of their "substantively identical"

5

language, United States v. Jarmon, 596 F.3d 228, 231 n.* (4th Cir. 2010), courts should "rely upon precedents evaluating whether an offense constitutes a violent felony under. . .[the ACCA's residual clause] interchangeably with precedents evaluating whether an offense constitutes a crime of violence under [U.S.S.G. §4B1.2(a)'s residual clause]." Clay, 627 F.3d at 965.

However, singular focus on the close linguistic connection between the two clauses (and the corresponding effect of that connection) ignores the legal differences between binding statutes, like the ACCA, and advisory Sentencing Guidelines meant only to guide a sentencing court's exercise of its discretion. While the Fifth Amendment's vagueness doctrine does apply to statutes (like the ACCA), the vagueness doctrine not apply to the advisory Sentencing Guidelines. United States v. Matchett, 802 F.3d 1185, 1193–96 (11th Cir. 2015); see also United States v. Ellis, 815 F.3d 419, 421–22 (8th Cir. 2016) (holding district court's application of U.S.S.G. §4B1.2(a)'s residual clause was not "plain error" even after Johnson).

The Fifth Amendment provides that "[n]o person shall. . .be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Again, "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson, 135 S. Ct. at 2556. The animating purpose of the vagueness doctrine is twofold: it provides to the public fair notice of the conduct punished by a given law or statute, and it protects against arbitrary enforcement of such a law by prosecutors, policemen, or judges. See id. at 2556–57. The vagueness doctrine applies "not only to statutes defining elements of crimes, but also to statutes fixing sentences." Id. at 2557.

Neither rationale applies here.  First, notice.  Neither a particular criminal defendant nor the public at large has an "expectation subject to due process protection" in a particular Guidelines sentence under the current discretionary sentencing scheme.  See Irizarry v. United States, 553 U.S. 708, 713–14 (2008); United States v. Lee, 821 F.3d 1124, 1134 (9th Cir. 2016) (Ikuta, J., dissenting).  In Irizarry the Court held that a criminal defendant had no expectation in a Guidelines range sentence subject to due process protection.  In particular, the Court held that due process did not require the sentencing court to provide a criminal defendant with notice that it was contemplating an upward variance from the advisory Guidelines range sentence calculated in his Presentence Investigation Report.  See Irizarry, 553 U.S. at 713–14.  If due process does not mandate that a criminal defendant receive notice of the sentence to be imposed in his case, it follows that a member of the public similarly is not entitled to notice of the range of sentences potentially applicable to him, at least beyond the notice provided by a constitutionally firm statute announcing a mandatory minimum or statutory maximum.

Other courts disagree.  See, e.g., Pawlak, 822 F.3d at 909–10.  They focus on the fact that Irizarry's holding only touches on "adversarial" notice (notice of allegations and opportunity to respond), as opposed to "ex ante" notice (notice of conduct that is prohibited and the consequences of such conduct).  See, e.g., id.  However, those two types of notice are born of the same due process clause.  Thus, in the abstract, adversarial and ex ante notice both are means to protect against deprivation of an interest or expectancy in life, liberty, or property.  However, in Irizarry, the Supreme Court rejected the idea that the due process clause protects any interest or expectancy one might claim in knowing with certainty the sentence to be imposed by the court in a discretionary sentencing regime.  See Irizarry, 553 U.S. at 713–14.

7

Moreover, limiting <u>Irizarry</u>'s holding to "adversarial" notice is illogical. With deference to the majority of circuits, the notice they demand after <u>Johnson</u> is illusory. So the logic goes: the general public has a due process right to know the precise penalty (or range of penalties) a crime may carry. As a practical matter, that idealized standard of notice is impossible to achieve in a discretionary sentencing regime. More significantly, the "ex ante" notice these courts purport to provide the public is all for naught; <u>Irizarry</u>'s holding actually renders that notice meaningless at the time it would matter most, sentencing. The most logical conclusion, then, is that there is no constitutional right to "ex ante" notice of the sentence recommended to the court by the advisory Sentencing Guidelines.

Before turning to the second theoretical ground underlying the Fifth Amendment vagueness doctrine, the court pauses briefly to discuss a case that has become a centerpiece of many opinions applying <u>Johnson</u> to the advisory Sentencing Guidelines, <u>Peugh v. United States</u>, __ U.S.__, 133 S. Ct. 2072 (2013). In <u>Peugh</u> the Supreme Court held that, notwithstanding 18 U.S.C. §3553(a)(4)(A)(ii)'s instruction to apply the version of the Sentencing Guidelines "in effect on the date the defendant is sentenced," the ex post facto clause requires a sentencing court to apply the version of the advisory Sentencing Guidelines in effect at the time the defendant committed the offense, if the more recent Guidelines create a "sufficient risk" of increased punishment, as compared to the Guidelines in effect on the date the defendant committed the offense. <u>See id.</u> at 2079–82. In so holding, the Court reasoned that sentencing courts' close adherence to the advisory Guidelines, as well as the fact that they were designed to be the "lodestone of sentencing" "create[d] a sufficient risk of a higher sentence to constitute an ex post facto violation." <u>Id.</u> at 2082–84.

8

Many courts have relied on Peugh to conclude that the advisory Guidelines are categorically subject to constitutional challenges. See, e.g., Sheffield, 2016 WL 4254995, at *13. However, that analysis stretches Peugh too far. The Peugh Court explicitly rejected the notion that the advisory Guidelines were subject to constitutional challenges in all cases. For example, in discussing Peugh's prospective effect on the Sixth Amendment remedy announced in United States v. Booker, 543 U.S. 220 (2005), the Court stated:

> Finally, the Government contends that a rule that the Ex Post Facto Clause is violated by the application of an increased Guidelines range would be in tension with this Court's post-Booker cases and, indeed, would "largely undo. . .the Booker remedy" for the Sixth Amendment violation found there. If the Guidelines are binding enough to trigger an ex post facto violation, the argument goes, then they must be binding enough to trigger a Sixth Amendment violation as well. The Government's argument assumes that the Sixth Amendment and the Ex Post Facto Clause share a common boundary; that only where judge-found facts are the basis of a higher sentence in a manner that raises Sixth Amendment concerns can a set of sentencing rules be sufficiently determinate to run afoul of the Ex Post Facto Clause. But the Sixth Amendment and Ex Post Facto Clause inquiries are analytically distinct. Our Sixth Amendment cases have focused on when a given finding of fact is required to make a defendant legally eligible for a more severe penalty. Our ex post facto cases, in contrast, have focused on whether a change in law creates a "significant risk" of a higher sentence; here, whether a sentence in conformity with the new Guidelines is substantially likely. The Booker remedy was designed, and has been subsequently calibrated, to exploit precisely this distinction: it is intended to promote sentencing uniformity while avoiding a Sixth Amendment violation.

Peugh, 133 S. Ct. at 2087–88 (internal citations omitted). Thus, it is incorrect to assume that Peugh opens the advisory Sentencing Guidelines to all types of constitutional challenges. The questions of notice and arbitrary enforcement posed here are analytically distinct from the "sufficient risk" inquiry posed in Peugh.

Indeed, the only real relevance Peugh might have in the context of this case is its discussion of the ex post facto doctrine's notice-based underpinning. However, an analysis of the Peugh Court's notice discussion only gives weight to this court's analysis. In Peugh a plurality of the Court

9

observed that the Court's holding was "consistent with [the] basic principles of fairness that animate the Ex Post Facto Clause." Id. at 2084 (plurality opinion). The plurality discussed the ex post facto clause's notice-based purpose, but went further, saying that "[e]ven where. . .concerns [of notice] are not directly implicated, however, the Clause also safeguards a fundamental fairness interest in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." Id. at 2084–85 (internal alterations and quotations omitted). The plurality concluded, citing Irizarry, that even though due process does not require the advisory Sentencing Guidelines provide notice of the sentence likely to be imposed, that those "principles of 'fundamental justice'" do. See id. at 2085.

The court need not delineate the precise difference between due process and the "principles of fundamental justice" relied on by the Peugh plurality. It is sufficient for purposes of this case to conclude that they are different. See United States v. Gonzalez-Longoria, __ F.3d __, 2016 WL 4169127, at *8 (5th Cir. 2016) (Jones, J., concurring). As the Peugh plurality suggested, in light of Irizarry, the public at large has no due process right to ex ante notice of the precise sentence that likely will accompany a conviction for a crime. See Peugh, 133 S. Ct. at 2084–85 (plurality opinion). Accordingly, the court holds that there is no right to ex ante notice of the sentence likely to be recommended by the advisory Sentencing Guidelines. Thus, U.S.S.G. §4B1.2(a)'s residual clause survives the first portion of the constitutional vagueness analysis.

That does not end the inquiry, however. Constitutional vagueness principles also safeguard against the "arbitrary enforcement by judges" of "statutes fixing sentences." See Johnson, 135 S. Ct. at 2557. This aspect of the vagueness doctrine does not apply to the advisory Sentencing Guidelines, however, because they are not "statutes fixing sentences." Certainly the advisory

10

Guidelines are "intended" to be the "lodestone of sentencing." Peugh, 133 S. Ct. at 2084 (majority opinion). However, although that intent renders changes in the Guidelines's recommendations subject to ex post facto challenges under a "sufficient risk" standard, Congress's intent that the advisory Guidelines serve as the "lodestone of sentencing" does not mean that the advisory Guidelines "fix[] sentences." To the contrary, a district court may not presume that a within-Guidelines range sentence is reasonable. See Pepper v. United States, 562 U.S. 476, 496, 500 (2011). Nor may the court presume a within-Guidelines range sentence is appropriate. See Gall v. United States, 552 U.S. 38, 50 (2007). A defendant's sentence is a function of the court's discretion, and is not fixed by any statute (other than those setting statutory maximums or mandatory minimums). That is so even though the court must calculate the advisory Guidelines range correctly or risk reversal for procedural error. Id. at 51. That procedure is just the starting point. Because the court only starts with that procedural calculation, but ultimately exercises its discretion in fashioning an appropriate sentence, any procedural defect is insulated from constitutional challenge behind the firewall of the court's discretion. In other words, there is no basis for imbuing that procedural jumping-off point with constitutional significance in a discretionary sentencing regime.

Accordingly, the court holds that the vagueness doctrine may not be used to challenge the advisory Sentencing Guidelines. Thus, defendant's constitutional challenge to U.S.S.G. §4B1.2(a)'s residual clause fails and his sentence properly was enhanced under U.S.S.G. §2K2.1(a)(4)(A).

## CONCLUSION

For the foregoing reasons, the court OVERRULES defendant's objection to the court's calculation of his base offense level, using to U.S.S.G. §2K2.1(a)(4)(A).

SO ORDERED, this the 18th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge